GOULD, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority opinion’s discussion of the National Environmental Policy Act and the National Historic Preservation Act. I also join the majority’s discussion of the Resource Management Plan’s (RMP) compliance with the Federal Land Policy and Management Act of 1976 (FLPMA) and the Proclamation insofar as it concludes (1) that the RMP did not violate the requirement that Wilderness Study Areas remain roadless and unimpaired and (2) that allowing parking and dispersed camping within 50 feet of roads is reasonable under the administrative-purpose exception to the Proclamation’s off-road travel ban. But I part company with the majority’s conclusion that the RMP’s definition of “road” for purposes of the off-road travel ban is reasonable.
The Proclamation requires the Bureau of Land Management (BLM) to prepare a transportation plan that “prohibit[s] all motorized and mechanized vehicle use off road,” for the express “purpose of protecting the objects” of the Monument. Proclamation No. 7398, 3 C.F.R. § 7398 (2002). The off-road travel ban is intimately tied to the Proclamation’s protection of Monument objects and to its goal of maintaining the “remote” and “undeveloped” nature of the Monument. Id.
The Proclamation did not define “road” or “off road.” The RMP defined a “road” as “a linear route segment that can be created by the passage of vehicles (two-track); constructed; improved; or maintained for motorized travel.” Under this *1011 definition, the Proclamation’s off-road travel ban will not be violated by a vehicle traveling on a two-track—a route “where perennial vegetation is devoid or scarce, or where wheel tracks are continuous depressions in the soil yet evident to the casual observer.” I conclude that BLM’s adoption of this definition of “road” violates the Proclamation, FLPMA, and the Administrative Procedure Act (APA) because BLM did not explain how its expansive definition of “road” serves the Proclamation’s essential purpose of protecting Monument objects.
The majority upholds BLM’s definition of “road” in the RMP based in part on the deference that we give BLM’s interpretation of the Proclamation and the majority’s conclusion that the RPM’s “road” definition is “not unreasonable on its face.” True, we owe deference to BLM’s interpretation of the Proclamation. See Kester v. Campbell, 652 F.2d 13, 15 (9th Cir.1981). But even with deference, I disagree that BLM’s definition of “road” can survive APA review. Under the APA, an “agency must examine the relevant data and articulate a satisfactory explanation for its action including a ‘rational connection between the facts found and the choice made.’ ” Motor Vehicle Mfrs. Ass’n, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). BLM did not do that here. The RMP does not explain why the selected definition of “road” for the transportation plan and the off-road travel ban serves the purpose of protecting Monument objects. That is enough to invalidate the BLM’s process on this point. But if there were any doubt, it should be dispelled by the common-sense understanding that vehicle travel on the primitive two-track routes can only impair the objects that the Proclamation sought to protect. To define roads so broadly is to strip the off-road travel ban of its significance for the Monument.
The national monument designation changed the status quo for the Upper Missouri River Breaks area, elevating protection of the “biological, geological, and historical objects of interest.” 3 C.F.R. § 7398 (2002). But the definition of “road” adopted in the RMP for the off-road travel ban maintains the same definition of road employed in the two RMPs that previously governed the area, the Judith Valley Phillips RMP and the West HiLine RMP. The Monument RMP does not explain why this broad definition of “road” best serves the Proclamation’s purpose.
If BLM had consistently used one definition of “road,” it might be fine for it to use that definition here without explanation. But that is not the case. The RMP, itself, employs two different definitions of road, one for the off-road travel ban and one for Wilderness Study Areas. The Wilderness Study Area road definition is derived from FLPMA’s legislative history, which defined roads as routes “improved and maintained by mechanical means to insure relatively regular and continuous use.” H.R.Rep. No. 94-1163, at 17 (1976), reprinted in 1976 U.S.C.C.A.N. 6175, 6191. Ways, by contrast, were defined as routes “maintained solely by the passage of vehicles.” Id. These definitions of “roads” and “ways” were also used in the BLM’s 9100 Engineering Manual, which was in effect at the time of the Proclamation. Because BLM had more than one viable definition of “road” to choose from-—one that included two-track routes and one that did not— its failure to explain how its selected definition of “road” best serves the Proclamation’s goals of protecting Monument objects is troubling and does not bode well for preservation.
This concern is magnified by the confusion surrounding the definition of “road” during the development of the RMP. The *1012 record contains correspondence between BLM employees working on the RMP debating what definition of road should be adopted in the RMP. And the State of Montana expressed concern about the inclusion of “two-track” routes in the RMP definition of “road” because it contributed to “very high road density given that the Monument designation was based on its remote nature and its ‘wild country.’ ” The State of Montana’s concern shows that it is at least debatable whether BLM’s adoption of the more expansive “road” definition comports with the Proclamation’s purpose. BLM might have settled the debate by giving sound reasons for why the RMP’s definition of “road” protects Monument objects. But it did not.
The Government argues that the rationale for the RMP’s “road” definition can be discerned through references to BLM Manual 9113 and road inventory guidelines and that its adopted definition adheres to national guidance for defining roads. This argument misses the mark. The issue is not that the RMP’s definition of “road” is unreasonable in and of itself; defining roads to include two-tracks may be reasonable in many contexts. Rather, the issue is that BLM adopted a broad definition of “road” without explaining how that definition best protects Monument objects and advances the goals behind the off-road travel ban. A common-sense review yields concern that the RMP’s definition could impair these objects. This concern is not alleviated by anything in the record that explains or supports the conclusion that including “two-tracks” in the RMP’s definition of “road” advances the Proclamation’s goals of preservation and protection. I would hold that, on this record, the RMP’s definition of “road” violates the Proclamation, FLPMA, and the APA because BLM has not “articulate[d] a satisfactory explanation for its action.” Motor Vehicle Mfrs. Ass’n, Inc., 463 U.S. at 43, 103 S.Ct. 2856.